UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DIAZ,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>STEVEN KENNEWAY, et al.,  )<br>  )<br>    Defendants.  )<br>  ) | Civil Action No.<br>20-12159-FDS |

MEMORANDUM AND ORDER ON PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT

SAYLOR, J.

This is an action by a state prisoner alleging a violation of his constitutional rights. Plaintiff John Diaz contends that he was punished for exercising his First Amendment right not to speak when he refused to answer questions from prison guards about an incident that occurred on his cell block. Defendants contend that the First Amendment does not protect such conduct, and that, in any case, plaintiff was disciplined for refusing a direct order to enter the room where interviews were taking place, not for refusing to speak with investigators. Plaintiff seeks both monetary and injunctive relief against several defendants.

Both plaintiff and defendants have moved for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment will be denied, and defendants' motion for summary judgment will be granted.

**I.   Background**

    **A.   Factual Background**

The following facts are undisputed unless otherwise noted.

John Diaz is currently an inmate at MCI-Norfolk. (Defs.' Stat. Material Facts ("DSMF") ¶ 1, Dkt. No. 108). At all times relevant to this case, he was incarcerated at Souza-Baranowski Correctional Center ("SBCC"). (*Id.*).

Stephen Kenneway was the Superintendent of SBCC from February 2019 through May 2020. (*Id.* ¶ 5).

Thomas Tocci is the Institutional Grievance Coordinator at SBCC. (*Id.* ¶ 9).

Matthew McGurn was an Inner Perimeter Security ("IPS") officer at SBCC. (*Id.* ¶ 19).[1]

Larry Amblo served as a Disciplinary Officer at SBCC. (*Id.* ¶ 11). A Disciplinary Officer "oversees disciplinary processing functions at the institutional level" by reviewing prison disciplinary reports after they are filed by a reporting officer. (*Id.* ¶ 13).

Jordi Troncoso also served as a Disciplinary Officer at SBCC. (*Id.* ¶ 12).

Jonathan Toloczko served as a Hearing Officer at SBCC. (*Id.* ¶ 15). A Hearing Officer presides at prison disciplinary hearings. (*Id.* ¶ 16).

Joseph Prato served as Mailroom Supervisor at SBCC from December 2018 to August 2022. (*Id.* ¶ 7).[2]

On August 13, 2019, IPS officers were in plaintiff's unit conducting interviews concerning an altercation that had occurred the preceding night. (*Id.* ¶ 40). The interviews were conducted in a room called the Correctional Program Officer, or CPO, office. (*Id.*). At around 2:00 that afternoon, the door to plaintiff's cell was opened. (Pl.'s Aff. Undisputed Facts ("Pl.'s Aff.") 2, Dkt. No. 105). The parties' accounts diverge at that point.

---

[1] Neither party has presented evidence as to whether McGurn still works as an IPS officer at SBCC.

[2] In the complaint, this defendant's last name is spelled "Prado," but defendants indicate that it properly spelled "Prato." (DSMF ¶ 7). The clerk is directed to update the docket accordingly.

Plaintiff states that he was called to the unit officer's desk, where he was told, simply, "The IPS want to speak to you." (Pl.'s Aff. 2). Defendants state that plaintiff was told when his cell was opened to report to the CPO office to speak with staff. (DSMF ¶ 40). According to defendants, instead of going to the CPO office, plaintiff went to the unit officer's desk, where he told the unit officer that he was "all set." (*Id.*). Defendants state that plaintiff was then given a "direct order" to report to the CPO office, which he refused. (*Id.*). Plaintiff does not dispute that he never entered the CPO office on August 13, 2019, although he does state that "nobody ever gave [him] a direct order." (Pl's. Aff. 2).

McGurn authored a disciplinary report against plaintiff detailing the facts of the incident. (DSMF ¶ 41). A hearing on the report was held on April 17, 2020. (*Id.* ¶ 43). At the hearing, plaintiff testified that he understood the First Amendment to protect him from having to enter the CPO office where interviews were being conducted. (*Id.* ¶ 45; Ex. J at 6, Dkt. No. 108-10).

Following the hearing, plaintiff was found guilty of "refusing a direct order by any staff member" and was given three days of room restriction as punishment. (*Id.* ¶ 46-47; Ex. J at 1). He appealed the guilty finding to the prison superintendent, arguing that the conduct for which he was disciplined was protected by the First Amendment. (*Id.* ¶ 48; Ex. J at 3). The superintendent denied the appeal, finding that plaintiff "[was] not found guilty of not speaking[,] but guilty of not entering the room after a direct order was given." (*Id.* ¶ 49; Ex. J at 4).

B.  **Procedural Background**

Plaintiff, proceeding *pro se*, filed a complaint on December 2, 2020 *in forma pauperis*. The complaint asserted claims for damages and equitable relief based on violations of state law (Counts 1 and 2), the First Amendment (Count 3), and the Fourteenth Amendment (Count 4). After screening the complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the claims

3

against defendants Carol Mici, Thomas Turco, Dena Gray, and Bethany Hisman. (Dkt. No. 6). The remaining defendants were served with the complaint on March 22, 2021.

After lengthy periods of inactivity and delay, on February 5, 2025, the Court held a status conference at which plaintiff moved to dismiss all claims except for Count 3, the First Amendment claim. (Dkt. No. 99). The Court granted that motion. (*Id.*).

Plaintiff and defendants have now cross-moved for summary judgment on the one remaining claim. (Dkt. Nos. 104, 106).

## II.   Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

"Generally, in deciding cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. . . . But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) (internal citations and quotation marks omitted); *see also Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 496 (D.N.H. 1996) ("Because the issues raised in the motion and cross-motion are identical, the court will discuss and resolve [them] in unison.").

### III.    Analysis

#### A.    Defendants Kenneway, Tocci, Amblo, Troncoso, Toloczko, and Prato

Plaintiff's motion for summary judgment only addresses the actions of defendant McGurn, and (in his response to defendants' motion for summary judgment) he concedes that McGurn is the only defendant relevant to the remaining claim. (*See* Dkt. No. 104; Dkt. No. 109 at 3). Because there appears to be no dispute as to that issue, summary judgment will be granted in favor of defendants Kenneway, Tocci, Amblo, Troncosco, Toloczko, and Prato.

#### B.    Defendant McGurn

The sole remaining claim (Count 3) is a First Amendment retaliation claim against McGurn seeking injunctive and monetary relief. The First Amendment guarantees not only freedom from government censorship, but also freedom from official retaliation based on protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)) (alteration in original). Even conduct

5

that "fall[s] short of a direct prohibition against the exercise of First Amendment rights" can be actionable if it has a "deterrent, or 'chilling,' effect." *Board of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

While many rights and freedoms are necessarily curtailed during incarceration, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Thus, despite the general deference owed to the managerial decisions of prison officials, "retaliation against a prisoner's exercise of constitutional rights is actionable." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). However, "to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show [1] that he engaged in a protected activity, [2] that the state took an adverse action against him, and [3] that there is a causal link between the former and the latter." *Id.* Furthermore, as to causation, a prisoner must show that "he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive." *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 68 (D. Mass. 2015) (quoting *Schofield v. Clarke*, 769 F. Supp. 2d 42, 47 (D. Mass. 2011)).

### 1. **Injunctive Relief**

The claim for injunctive relief against McGurn in his official capacity is moot.[3] "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *American C.L. Union of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v.*

---

[3] Neither plaintiff nor defendants raised the issue of mootness as to the claim for injunctive relief in their briefing. However, because the doctrine of mootness is based in Article III's case-or-controversy requirement, it goes to the issue of a court's subject-matter jurisdiction, and the Court may—and, indeed, must—determine for itself whether a claim is moot. *See In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (noting that "federal courts lack authority to bypass the mootness inquiry when the record reveals mootness may be an issue" (citation modified)).

6

*Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." *Gulf of Maine Fisherman's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002).

> In the context of challenges to prison policies, the First Circuit has held:
>
> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted.

*Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007)); *see also Snell v. Neville*, 998 F.3d 474, 485 (1st Cir. 2021) ("An inmate generally loses the right to challenge prison conditions or policies at a particular facility when he transfers or leaves that prison because his complaints would no longer have any substantial impact on his life."). The sole exception to that rule is if an inmate can show that the challenged policies are "capable of repetition, yet evading review." *Ford*, 768 F.3d at 30. "The exception applies where: (1) the challenged action did not last long enough for the parties to litigate the harm before it ended; and (2) there is a reasonable expectation that the complaining party will endure the same allegedly harmful action at some point in the future." *Snell*, 998 F.3d at 485.

In March 2024, plaintiff was transferred from SBCC to MCI-Shirley. (Dkt. No. 53 at 1). He was then transferred to MCI-Norfolk in May 2024. (Dkt. No. 62). Neither party has presented any evidence that he now works at MCI-Norfolk rather than SBCC. Therefore, an injunction against him would not redress any prospective injury to plaintiff. Because any

injunction against McGurn "would no longer have any substantial impact on [plaintiff's] life," the claim for injunctive relief is presumptively moot. *See Snell*, 998 F.3d at 485.

Furthermore, the claim does not appear to fall within the exception for claims that are "capable of repetition yet evading review." There is no evidence in the record suggesting that plaintiff will or is likely to be transferred back to SBCC.[4] And even if he were, nothing in the record supports a "reasonable expectation" that he would once again be disciplined for refusing to speak with prison investigators. The incident at issue occurred in August 2019, roughly four and a half years before he was transferred from SBCC to MCI-Shirley. (DSMF ¶ 40). There is no evidence that he was subject to further retaliation during that intervening period. Based on that long interval without reoccurrence, there is no "reasonable expectation" that plaintiff would face similar disciplinary action even if he were transferred back to SBCC at some point in the future.

Accordingly, the claim for injunctive relief against defendant McGurn is moot, and summary judgment in his favor as to that issue will be granted.

### 2. Monetary Relief

The claim for monetary relief against McGurn is not moot because it is based on alleged past injuries to plaintiff rather than a prospective future injury. "It is settled law that a claim for monetary relief, including restitution, may survive events that moot injunctive or declaratory relief." *Town of Portsmouth v. Lewis*, 813 F.3d 54, 60 (1st Cir. 2016). The claim for monetary relief is nonetheless barred by qualified immunity.

---

[4] According to plaintiff's 2024 classification decision, provided to the Court earlier in this case, plaintiff is now recommended for placement in a "Medium" security-level facility. (*See* Dkt. No. 55-7).

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is determined according to a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Maldonado*, 568 F.3d at 268-69.

The question is not whether some right has been clearly established at a highly abstract level, but "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violated that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "An officer is entitled to qualified immunity if an objectively reasonable officer could have concluded (even mistakenly) that his or her conduct did not violate the plaintiffs' rights." *Johnson v. City of Biddeford*, 92 F.4th 367, 375 (1st Cir. 2024) (citation modified). The qualified-immunity doctrine "leaves 'ample room for mistaken judgments.'" *Berthiaume*, 142 F.3d at 15 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

To show that an official's conduct violated a clearly established right, the plaintiff bears the burden "to identify controlling authority or a consensus of persuasive authority sufficient to put the officers on notice that their conduct violated the law." *Estate of Rahim v. Doe*, 51 F.4th 402, 412 (1st Cir. 2022); *see also Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015) (noting that a plaintiff's failure to identify such authority dooms their claims). While a prior case need not be identical to clearly establish a right, "[p]recedent involving similar facts

9

can help move a case beyond the otherwise 'hazy border between [improper] and acceptable [conduct]' and thereby provide an officer notice that a specific [act] is unlawful." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 18 (2015)).  Qualified immunity is an affirmative defense, and the burden is on defendants to show they are entitled to its protection. *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001).

To prove his retaliation claim, plaintiff must first show that he was engaged in an activity protected by the First Amendment. *See Hannon*, 645 F.3d at 48.  Whether his conduct was constitutionally protected turns out to be something of a difficult question.  The First Amendment's Free Speech Clause protects "both the right to speak freely and the right to refrain from speaking at all." *Janus v. American Fed'n of State, Cnty., & Mun. Emps.*, 138 S. Ct. 2448, 2463 (2018) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)); *see also West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).  At the same time, the realities of prison administration mean that while "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," constitutional claims by prisoners are reviewed with a greater degree of deference to the government than is afforded in other cases. *See Turner v. Safley*, 482 U.S. 78, 84 (1987).  There is also some factual dispute as to why exactly plaintiff was subject to discipline: plaintiff contends that he was punished for not speaking with the IPS officers, while defendants contend that he was disciplined for refusing a direct order to enter the CPO office. (*Compare* Pl.'s Aff. at 2, *with* DSMF ¶ 40).

In any event, even viewing the facts in the light most favorable to the plaintiff, and assuming that he was in fact disciplined for refusing to speak with the IPS officers, McGurn's actions are protected by qualified immunity.  Again, McGurn is entitled to qualified immunity unless plaintiff can "identify controlling authority or a consensus of persuasive authority

10

sufficient to put [McGurn] on notice that [his] conduct violated the law." *Estate of Rahim*, 51 F.4th at 412. And the appropriate focus is on "precedents existing at the time of the incident," not as of the time of a court's review. *See McKenney v. Mangino*, 873 F.3d 75, 83 (1st Cir. 2017).

In his briefing, plaintiff points to one case, *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), that he contends is sufficient to have clearly established a prisoner's First Amendment right to refuse to respond to questioning. (*See* Dkt. No. 109 at 6). That argument, however, fails for two reasons.

First, the facts of *Burns* are clearly distinguishable. In *Burns*, the plaintiff was approached by prison guards who wanted him to provide them with information on an ongoing basis. *See Burns*, 890 F.3d at 82. When he refused to do so, he was placed into restrictive custody. *See id.* at 83. On those facts, the Second Circuit recognized that "the refusal . . . to serve as a snitch on an ongoing basis [is] protected by the First Amendment." *Id.* at 93. In this case, by contrast, plaintiff refused to answer questions about a single past event during a subsequent investigation. Indeed, the *Burns* court explicitly noted that it was leaving open the question of whether such activity is subject to First Amendment protection. *See id.* ("We do not address whether Burns had a First Amendment right to refuse to give truthful information about a past event." (citation modified)).

Although a case need not be "directly on point" to make the law on a certain question clearly established, the relevant analogies must be drawn at "a high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018). Where the only relevant authority cited by plaintiff explicitly declined to decide the relevant question of law, he cannot meet his burden of showing that the answer to that question was clearly established.

Second, even if *Burns* were factually analogous, one out-of-circuit precedent is insufficient to show that the law on the issue is clearly established. The First Circuit has explicitly noted that a "single . . . out-of-circuit case . . . is insufficient as a matter of law" to show that a principle is clearly established, because "it is neither controlling authority nor a 'consensus' of persuasive authority." *Estate of Rahim*, 51 F.4th at 413. *Burns* itself noted that as of May 2018, "neither the Supreme Court nor any other circuit court has yet to decide whether a prisoner holds a right not to serve as an informant." *Burns*, 890 F.3d at 94. Plaintiff cites to no case decided between May 2018 and August 2019 that reached a similar holding.

Defendant McGurn is therefore entitled to qualified immunity as to the claim for money damages, because it was not clearly established as of August 2019 that the First Amendment protected a prisoner's right not to provide information as part of an investigation concerning past events. Summary judgment will therefore be granted in his favor as to that claim.

## IV.  Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  October 23, 2025            United States District Judge

12